IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge Charlotte N. Sweeney

Civil Action No. 21-cv-02337-CNS

MARSHALL KILPATRIC,

     Applicant,

v.

COLORADO DEPT. OF CORRECTIONS, DIVISION OF ADULT PAROLE, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

     Respondents.

---

## ORDER DENYING APPLICATION FOR A WRIT OF HABEAS CORPUS

---

This matter is before the Court on the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 10), filed *pro se* by Applicant Marshall Kilpatric on November 9, 2021. Because Mr. Kilpatric proceeds *pro se,* the Court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The Court may not assume that a *pro se* litigant can prove facts that have not been alleged, or that a respondent has violated laws in ways that he or she has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *Pro se* status does not entitle a *pro se* litigant to an application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

1

After considering the parties' filings, along with the state court record, the Court will deny the § 2254 Application.

## I.  BACKGROUND

Mr. Kilpatric is currently on parole under the supervision of the Colorado Department of Corrections following his release from incarceration for his criminal convictions in Jefferson County, Colorado District Court Case No. 15CR2853. (ECF No. 10 at 2; State Court Record ("R.") at 261). Mr. Kilpatric's convictions stem from three separate robberies in Westminster, Colorado. (ECF No. 15-2, *People v. Marshall Wayne Kilpatric*, No. 17CA1425 (Colo. App. April 16, 2020) (unpublished)). The first robbery occurred in a movie theater parking lot on August 2, 2015. (State Court Transcripts ("T.") 4/10/17 at 142-43). The second robbery occurred in a hotel parking lot on August 10, 2015. (*Id.* at 158-60). And the third robbery occurred at a drive-up ATM on August 13, 2015. (*Id.* at 187). After grocery store video footage linked Mr. Kilpatric to a debit card stolen during one of the robberies, Westminster Police Detectives David Galbraith and Ben Russell interviewed Mr. Kilpatric at his home on September 28, 2015. (ECF No. 15-2 at 2; T. 4/11/17 at 32-47). During this interview, Mr. Kilpatric admitted to committing the three robberies and provided a written statement. (*Id.*).

Before trial, Mr. Kilpatric filed a motion to suppress the statements he made to the detectives, arguing that his statements were not voluntary. (R. at 42-44, 92-94). The district court held an evidentiary hearing on August 19, 2016. (*Id.* at 92). In a written order entered September 19, 2016, the court denied the motion to suppress, finding that Mr. Kilpatric's statements were voluntarily made. (*Id.* at 92-96).

On April 12, 2017, a jury convicted Mr. Kilpatric of three counts of aggravated robbery, three counts of menacing with a deadly weapon, and one count of identity theft. (ECF No. 15-2 at 2; T. 4/12/17 at 125-126). On June 23, 2017, the trial court sentenced him to four years of probation and one year of work release. (ECF No. 15-2 at 2; R. at 203). Mr. Kilpatric subsequently was resentenced on November 13, 2018, to four years in prison followed by five years of parole. (R. at 261).

Mr. Kilpatric appealed his convictions, arguing that: 1) the trial court erred in determining his statements to the police officers were voluntary; 2) the trial court erred in allowing a police officer to provide expert testimony in the guise of lay opinion; and 3) the trial court erred in not asking a witness a juror's question about Mr. Kilpatric's post-traumatic stress disorder ("PTSD"). (ECF No. 15-1 at 16-53). On April 16, 2020, the Colorado Court of Appeals affirmed the judgment of conviction. (ECF No. 15-2). Mr. Kilpatric filed a petition for a writ of certiorari in the Colorado Supreme Court, which was denied on August 17, 2020. (ECF No. 15-4).

Mr. Kilpatric initiated this action on August 27, 2021. (ECF No. 1). On November 9, 2021, he filed the § 2254 Application asserting the following four claims:

> Claim One: "The state court reversibly and clearly erred in concluding that the trial court's appointed psychologist Dr. Thiele's medical opinions and conclusions – that Marshall Kilpatric's statements were involuntary due to his mental condition(s) and the detectives' interrogation tactics – were not credible, which violated Marshall Killpatric's constitutional right to due process."
>
> Claim Two: "As per the previous claim, the state court reversibly and clearly erred in concluding that Marshall Kilpatric's statements to Detective Galbraith were voluntary, and their admission at trial violated Marshall Kilpatric's constitutional right to due process."
>
> Claim Three: "The state court reversibly and clearly erred in allowing Detective Galbraith to provide expert testimony in the guise of lay opinion, violating Marshall

Kilpatric's constitutional rights to due process, to a fair trial by an impartial jury that is untainted by inadmissible evidence, and CRE 701-702."

Claim Four: "The state court reversibly and clearly erred in failing to ask the juror's question whether Marshall Kilpatric's post traumatic stress disorder could affect his judgment, when a central trial issue was Marshall Kilpatric's mental condition, which violated Marshall Kilpatric's constitutional right to due process affording the right and opportunity to present evidence in his own defense."

(ECF No. 10 at 5-6).

Respondents filed a Pre-Answer Response on December 21, 2021, stating that they do not assert the affirmative defenses of untimeliness or failure to exhaust state remedies. (ECF No. 15). Respondents thereafter filed an Answer to the Application on February 23, 2022. (ECF No. 21). Mr. Kilpatric did not file a reply despite having been given the opportunity to do so.

## II. LEGAL STANDARDS

### A. 28 U.S.C. § 2254(d)

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Court's inquiry is straightforward "when the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). "In that case, a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Id.*

Review under the AEDPA serves only as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (quotation marks and citation omitted). Mr. Kilpatric bears the burden of proof under § 2254(d). *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

### 1.   *28 U.S.C. § 2254(d)(1)*

The threshold question under § 2254(d)(1) is whether Mr. Kilpatric seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id*. at 412.  Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008). If there is no clearly established federal law, then that is the end of the Court's inquiry under § 2254(d)(1). *See id*. at 1018.

If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law. *See Williams*, 529 U.S. at 404-05. A state court decision is contrary to clearly established federal law if the state court (a) "applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or (b) "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme

Court] precedent." *Id*. at 405-06. "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Id*. at 406 (citation omitted).

"A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts." *Id*. at 407-08. The Court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry. *See id*. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id*. at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard v. Boone*, 468 F.3d 665, 671 (10th Cir. 2006). Furthermore,

> evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Richter*, 562 U.S. at 101 (internal quotation marks and citation omitted). In conducting this analysis, the Court "must determine what arguments or theories supported or . . . could have supported[] the state court's decision" and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*. at 102. In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563

U.S. 170, 181 (2011).

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also Richter*, 562 U.S. at 102 ("even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."). Mr. Kilpatric must establish that "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

The state appellate court is not required to cite to the clearly established Supreme Court case law, or even be aware of it, so long as nothing in the state appellate court decision contradicts that law. *Early v. Packer,* 537 U.S. 3, 8 (2002).  Thus, when a state court adjudicates a federal issue relying solely on a state standard that is at least as favorable to the applicant as the federal standard, the federal court presumes an adjudication on the merits and applies AEDPA deference. *See Harris v. Poppell,* 411 F.3d 1189, 1196 (10th Cir. 2005).

### 2.    *28 U.S.C. § 2254(d)(2)*

The Court reviews claims of factual errors pursuant to 28 U.S.C. § 2254(d)(2).  *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002). Section 2254(d)(2) allows the Court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court. Pursuant to § 2254(e)(1), the Court must presume that the state court's factual determinations are correct, and Mr. Kilpatric bears the burden of rebutting the presumption by clear and convincing evidence. "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition

preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). "As the plain terms of the statute indicate," review under § 2254(d)(2) is limited to the evidence contained in the state court record. *Hooks v. Workman*, 689 F.3d 1148, 1163 (10th Cir. 2012).

### B.    *Brecht* Standard

Even if a habeas applicant demonstrates the existence of a constitutional violation, the constitutional error does not warrant habeas relief unless the Court concludes it "had substantial and injurious effect" on the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). "A 'substantial and injurious effect' exists when the court finds itself in 'grave doubt' about the effect of the error on the jury's verdict." *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995). "Grave doubt" exists when "the matter is so evenly balanced that [the Court is] in virtual equipoise as to the harmlessness of the error." *Id*. The Court makes this harmless error determination based upon a review of the entire state court record. *See Herrera v. Lemaster*, 225 F.3d 1176, 1179 (10th Cir. 2000).

### III.   ANALYSIS OF APPLICANT'S CLAIMS

### A. Voluntary Statements

Mr. Kilpatric first asserts in Claim One that his constitutional rights were violated when the trial court rejected Dr. Thiele's expert opinion—that Mr. Kilpatric was susceptible to making involuntary or coerced statements due to his mental state and the interrogation tactics used—as not credible in denying Mr. Kilpatric's motion to suppress his statements. (*See* ECF No. 10 at 5). In Claim Two, Mr. Kilpatric asserts that his constitutional rights were violated when his statements to the detectives were admitted at trial after the court concluded that the statements were

voluntarily made. (*Id.*). Both claims challenge the state court's ruling that Mr. Kilpatric's inculpatory statements to the detectives were voluntary.

### 1. *Applicable Supreme Court Law*

It was clearly established when Mr. Kilpatric was convicted that under the Due Process Clause of the Fourteenth Amendment, a defendant's statements to police must have been "made freely, voluntarily and without compulsion or inducement of any sort" in order to be admitted. *Nickel v. Hannigan,* 97 F.3d 403, 410 (10th Cir. 1996) (citing *Haynes v. State of Wash.,* 373 U.S. 503, 513 (1963)). "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v. Connelly*, 479 U.S. 157, 167 (1986). The Constitution is not "concerned with moral and psychological pressure to confess emanating from sources other than official coercion." *Oregon v. Elstad*, 470 U.S. 298, 304–305 (1985). *See also Culombe v. Connecticut,* 367 U.S. 568, 576 (1961) (recognizing that a confession is not involuntary where it is "naturally born of remorse, or relief, or desperation, or calculation.").

If the totality of the circumstances of the police interrogation demonstrate that the suspect's "will has been overborne and his capacity for self-determination critically impaired," the confession was not voluntary. *Schneckloth v. Bustamonte*, 412 U.S. 218, 225-26 (1973). *See also Dickerson v. United States*, 530 U.S. 428 (2000) (holding that the voluntariness of a confession is based on the totality of the circumstances of the police interrogation to determine "'whether a defendant's will was overborne"); *Mincey v. Arizona*, 437 U.S. 385, 401 (1978). Factors relevant to the voluntariness analysis include the age, education, and intelligence level of the defendant; whether the defendant was advised of his constitutional rights; the length of detention; the repeated

and prolonged nature of the questioning; and the use of physical punishment, such as the

deprivation of food or sleep. *Schneckloth*, 412 U.S. at 226. Threats or violence, promises of

leniency, and the exertion of any improper influence are factors to be considered in determining

whether a defendant's confession was coerced under the totality of the circumstances analysis. *See*

*Arizona v. Fulminante*, 499 U.S. 279, 286-87 (1991).

### 2. State Court Proceedings

The Colorado Court of Appeals provided the following summary of Mr. Kilpatric's claim

that his inculpatory statements to the detectives were not voluntary:

A. Additional Background

> Before trial, Kilpatric moved to suppress the statements he made to Detectives Galbraith and Russell. The trial court held a suppression hearing where both detectives and psychologist Dr. Jonathan Thiele testified.

1. Detectives' Testimony

> The detectives testified that they arrived at Kilpatric's home early in the morning, wearing plain clothes with their guns holstered. Detective Galbraith knocked on the front door and Kilpatric answered, appearing somewhat nervous but awake and coherent. After Detective Galbraith explained he was investigating a series of crimes and wanted to talk, Kilpatric invited the detectives in. Once inside, Detective Galbraith and Kilpatric sat at a dining room table (with Kilpatric sitting closest to the front door), and Detective Russell sat on a couch nearby.

> According to Detective Galbraith, he then told Kilpatric that he knew Kilpatric was involved in a "series" of robberies, said that he had been watching Kilpatric for a while, and asked Kilpatric why he needed the money. Kilpatric responded that he needed money because his disability checks had stopped. He further explained that he had pawned several valuable items and became desperate when he thought he was going to lose them. Detective Galbraith then asked for more details about the robberies, which Kilpatric provided along with "unique details" consistent with those the three victims had provided. These details included

that Kilpatric had (1) returned the first victim's wallet; (2) called the second victim's hotel in an attempt to return his wallet; and (3) asked the third victim to withdraw more money from an ATM.

Both detectives testified that the tone of the interview was conversational and relaxed, and that neither detective used a raised voice or harsh language. They also testified that neither of them fed Kilpatric with any details of the robberies.

After Kilpatric described each robbery, Detective Galbraith asked if he'd fill out a written statement. Kilpatric agreed and provided an apologetic statement that identified the general location of each robbery. The detectives testified that it was only after they arrested Kilpatric that he expressed surprise and confusion.

## 2. Dr. Thiele's Testimony and Report

The court appointed Dr. Thiele to evaluate Kilpatric's mental condition at the time he made his inculpatory statements. Dr. Thiele testified at the suppression hearing and submitted a written report with his findings.

Dr. Thiele diagnosed Kilpatric with unspecified trauma and concluded that Kilpatric was susceptible to making involuntary and coerced statements. He testified that his conclusion was based on the following: (1) Kilpatric's (self-reported) sleep deprivation and the possible lingering effects of sedating medication; (2) Kilpatric's high level of anxiety related to his history of trauma; and (3) Kilpatric's tendency to please authority figures (as reported by Kilpatric's therapist), which, Dr. Thiele opined, is "specifically mentioned in the literature about suggestibility and false confessions."

Therefore, according to Dr. Thiele, Kilpatric "would have a lower threshold for saying things that the police might want him to say than the average person would."

## 3. Trial Court's Ruling

The trial court denied the motion to suppress in a thorough written order. In it, the court rejected Dr. Thiele's testimony and opinions as "inconsistent with the testimony of the detectives" and found Kilpatric had "freely made the statements without any sort of coercion by the detectives." The court also found that Kilpatric was not in custody when he confessed to the robberies, a ruling Kilpatric doesn't now challenge.

(ECF No. 15-2 at 3-6).

In affirming the trial court's decision, the Colorado Court of Appeals performed the

following analysis:

> We perform a two-step inquiry to determine whether a statement was voluntary. We first ask whether the police's conduct was coercive and, if so, we next ask whether that conduct played a significant role in inducing the statements [*People v. Ramadon*, 2013 CO 68] at ¶ 20. Under this inquiry, we consider the totality of the circumstances and the "significant details surrounding and inhering in the interrogation under consideration." *People v. Gennings*, 808 P.2d 839, 844 (Colo. 1991); see *Ramadon*, ¶ 20 (providing a nonexclusive list of facts courts consider under the voluntariness inquiry).

Starting with the first question, Kilpatric generally argues the court's "legal conclusion" that his statements were voluntary was wrong. But he doesn't point to any record evidence to show the detectives engaged in coercive conduct. Nor does he cite evidence that they intimidated him, harassed him, or promised him anything. And nothing in the record shows they did.

Rather, the record supports the trial court's finding that the detectives were polite, courteous, and respectful during the interview, and that Kilpatric "freely made" the inculpatory statements. Because "coercive government conduct is a necessary predicate" to the finding that statements are not voluntary, Kilpatric's failure to point to any evidence that the detectives engaged in any coercive tactics forecloses his argument that his statements were involuntary. *Effland v. People*, 240 P.3d 868, 877 (Colo. 2010) (quoting *Colorado v. Connelly*, 479 U.S. 157, 167 (1986)).

To the extent Kilpatric suggests that the detectives' interrogation method was "psychologically coercive," we don't agree. Beyond asserting the detectives' method was somehow coercive, Kilpatric doesn't develop this argument. Nor does Kilpatric contend the detectives had any reason to believe that he would be especially susceptible to certain interrogation techniques or that they somehow exploited such alleged susceptibility. *Compare People v. Theander*, 2013 CO 15 ¶¶ 43044 (finding defendant's statements voluntary where there was no evidence that the officers deliberately took advantage of defendant's mental or physical state), with *People v. McIntyre*, 789 P.2d 1108, 1111 (Colo. 1990) (finding statements involuntary where evidence showed detective was aware of defendant's fragile mental state and emotional condition and exploited it to obtain the confession). To the contrary, the detectives testified that Kilpatric appeared awake, coherent, and sober. *See Theander*, ¶¶ 43-44; *McIntyre*, 789 P.2d at 1111; *see also United States v. Parker*, 116 F. Supp. 3d 159, 174 (W.D.N.Y. 2015) ("If an individual's 'mental impairment . . . should have reasonably been apparent to . . . interrogators, . . . a lesser quantum of coercion [may] render the confession involuntary.' 'In other words, the police must somehow overreach by exploiting a weakness or condition known to exist.'") (citations omitted).

Nor do we agree with Kilpatric's contention that the trial court erred in not crediting Dr. Thiele's opinion that Kilpatric was susceptible to making involuntary and coerced statements. First, Dr. Thiele didn't testify that the detectives knew, or could have known, about such susceptibility. His testimony therefore doesn't support the conclusion that the detectives actually engaged in coercive conduct. *See* [*Colorado v.*] *Connelly*, 479 U.S. [157] at 164 [1986] (stating that the defendant's mental condition does not resolve the issue of constitutional voluntariness by itself, apart from its relationship to official coercion). Second, credibility determinations and resolution of conflicting evidence are within the trial court's wheelhouse. Dr. Thiele's opinions were admittedly based, in part, on Kilpatric's rendition of the interview, which was different from the detectives' rendition. The court was not requited to credit Dr. Thiele's opinions or take as true the facts underlying them. *See People v. Brazzel,* 18 P.3d 1285, 1288 (Colo. 2001) (stating that it's for the trial court, and not the reviewing court, to weigh the evidence and determine the credibility of witnesses).

For these reasons, we agree with the trial court that Kilpatric's statements were voluntary.

(ECF No. 15-2 at 6-10).

### 3. AEDPA Analysis

Mr. Kilpatric has not shown by clear and convincing evidence that the state court's decision was unreasonable. Under § 2254(d)(2), "[i]t is not sufficient to show that '[r]easonable minds reviewing the record might disagree' about the state . . . court's finding." *Sharp v. Rohling*, 793 F.3d 1216, 1229 (10th Cir. 2015) (quoting *Rice v. Collins,* 546 U.S. 333, 341-42 (2006)). Instead, "where the state courts plainly misapprehend or misstate the record in making their findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim, that misapprehension can fatally undermine the fact-finding process, rendering the resulting factual finding unreasonable." *Id.* (internal quotation and citations omitted). Further, section 2254(d) does not give federal courts a "license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger,* 459 U.S. 422, 434 (1983). A trial court's credibility determination is owed great deference. *Patton v. Yount,* 467 U.S.

1025, 1038 (1984).

The Colorado Court of Appeals' factual findings that the police were "polite, courteous, and respectful during the interview," and not "aggressive, threatening, or confrontational" are presumed correct, and Mr. Kilpatric bears the burden of rebutting this presumption with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). Mr. Kilpatric does not point to any evidence supporting the existence of coercive police conduct. And the state court record supports the courts' summary of the evidence. (T. 8/19/16 at 18-34, 39-47, 60-65). Likewise, the state courts relied on testimony from the detectives that Mr. Kilpatric appeared "awake, coherent, and sober." (*Id.* at 19-20, 22, 30-33, 61-62). Mr. Kilpatric again fails to provide clear and convincing evidence to the contrary. As such, Mr. Kilpatric has not met his burden of demonstrating that the state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court.

The Colorado Court of Appeals' decision also does not reflect a misstatement or misapprehension of the record with respect to Dr. Thiele's testimony. Dr. Thiele diagnosed Mr. Kilpatric with unspecified trauma and concluded that he was susceptible to making an involuntary or coerced statement. (TR 8/19/16 at 71-74). Dr. Thiele also reported that Mr, Kilpatric told him that the officers were loud and aggressive and instructed him on what to write down. (*Id.* at 85-87). The Court of Appeals considered Dr. Thiele's opinions but reasonably adopted the trial court's reliance on the testimony of the detectives who conducted the in-person interview of Mr. Kilpatric over the testimony of Dr. Thiele who was not present at the interview. (ECF No. 15-2 at 9-10). The Court of Appeals correctly stated that "it's for the trial court, and not the reviewing court, to weigh the evidence and determine the credibility of witnesses." (*Id.*, citing *People v. Brazzel*, 18

P.3d 1285, 1288 (Colo. 2001)).

This Court finds that the Colorado Court of Appeals' decision was based on a reasonable determination of the facts, and that Mr. Kilpatric has failed to demonstrate an entitlement to relief under § 2254(d)(2).

Mr. Kilpatric also fails to demonstrate that the state court's decision is contrary to clearly established federal law. That is, he fails to demonstrate that the Colorado Court of Appeals applied a rule that contradicts the governing law set forth in Supreme Court cases or that the Colorado Court of Appeals confronted a set of facts materially indistinguishable from a decision of the Supreme Court and nevertheless arrived at a result different from the Supreme Court precedent. *See House*, 527 F.3d at 1018.

Finally, Mr. Kilpatric fails to demonstrate that the decision of the Colorado Court of Appeals was an unreasonable application of clearly established federal law.  Considering the totality of the circumstances, and giving the state court decision appropriate deference, this Court cannot conclude that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. 786-87. Thus, this Court concludes that Mr. Kilpatric is not entitled to relief under § 2254(d)(1).

### C. Expert Testimony

In Claim Three, Mr. Kilpatric asserts that the trial court erred in allowing Detective Galbraith to provide expert testimony "in the guise of lay opinion," in violation of Mr. Kilpatric's constitutional right to due process. (ECF No. 10 at 5-6). He specifically challenges Detective

Galbraith's testimony regarding the use (or non-use) of recording devices during police interrogations. (*Id.*)

### 1. *Applicable Supreme Court Law*

This claim contests a state evidentiary ruling. State court decisions that rest on matters of state law are binding on a federal habeas court. *Chapman v. LeMaster*, 302 F.3d 1189, 1196 (10th Cir. 2002). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire,* 502 U.S. 62, 67–68 (1991). Thus, "[h]abeas relief may not be granted on the basis of state court evidentiary rulings unless they rendered the trial so fundamentally unfair that a denial of constitutional rights results." *Mayes v. Gibson,* 210 F.3d 1284, 1293 (10th Cir. 2000).

The introduction of evidence fails the due process test of "fundamental fairness" only if the evidence "is so extremely unfair that its admission violates fundamental conceptions of justice." *Dowling v. United States,* 493 U.S. 342, 352 (1990) (internal quotation marks omitted); *see also Lott v. Trammell*, 705 F.3d 1167, 1190 (10th Cir. 2013). Under *Dowling,* "mere prejudice to a defendant does not mean that such prejudice is *unfair*; indeed, *all* evidence tending to prove guilt is prejudicial to a criminal defendant." *Sanborn v. Parker,* 629 F.3d 554, 576 (6th Cir. 2010) (internal quotation marks omitted). Thus, the Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly." *Dowling,* 493 U.S. at 352; *see also Sanborn,* 629 F.3d at 576 ("[C]learly established federal law provides that, for prejudice to be unfair in the constitutional sense, it must fit within a very narrow category of infractions"). The *Dowling* Court explained that when considering whether fundamental fairness was violated, courts

16

should "determine only whether the action complained of . . . violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions, and which define the community's sense of fair play and decency." *Id.* (citations and internal quotations omitted).

Further, "because a fundamental-fairness analysis is not subject to clearly definable legal elements, when engaged in such an endeavor a federal court must tread gingerly and exercise considerable self restraint." *Duckett v. Mullin,* 306 F.3d 982, 999 (10th Cir. 2002) (internal quotation marks omitted). An "[i]nquiry into fundamental unfairness requires examination of the entire proceedings, including the strength of the evidence against the petitioner." *Le v. Mullin,* 311 F.3d 1002, 1013 (10th Cir. 2002) (per curiam).

### *2. State Court Proceedings*

On appeal, the Colorado Court of Appeals provided the following relevant background:

A. Additional Background

> At trial, Detective Galbraith testified as a lay witness. During his direct examination, he explained that he didn't bring his department-issued recording device to the interview at Kilpatric's home. He further explained, in response to a juror's question, that an unwritten policy prohibited him from using his personal cell phone to record the interview.

> During cross-examination, Kilpatric's counsel highlighted the detective's decision not to retrieve his recording device before interviewing Kilpatric. On redirect, the prosecution asked Detective Galbraith whether there was anything uncommon or less valid about unrecorded police interviews. Detective Galbraith testified that there wasn't and that he had conducted "[p]robably thousands" of witness interviews without a video or audio recorder. Kilpatric objected to this line of questioning as leading and lacking foundation, which the trial court overruled.

(ECF No. 15-2 at 10-11).

The Colorado Court of Appeals reviewed the claim for plain error because Mr. Kilpatric did not object to Detective Galbraith's testimony as improper expert testimony. (*Id.* at 11-12). The

17

state appellate court found no plain error for two reasons:

First, although Kilpatric now objects to the redirect examination, the jury heard substantially the same testimony during Detective Galbraith's direct examination. There, Detective Galbraith testified, in part:

Q. All right. Is it standard practice, to your knowledge, in a lot of departments to not use recording devices?

A. We're not mandated to use a recording device. I do like to use them just so that they can be in the person's own words that we hear. But it's not mandated by law, policy, or statute that I know of.

Q. And, in fact, street officers in Westminster typically are not recording interviews?

A. They're not recording, no.

Q. And so you are trained to, essentially, take notes during interviews; is that correct?

A. That's correct, yes.

Q. And have you done that on many occasions?

A. Yes.

Q. In other words, taken notes prior to becoming a detective, for instance?

A. Yes. That's pretty much standard for patrol. You have a notepad, talk to people, take notes on it, and document it in a report.

Q. Okay. And is that essentially what you ended up doing in this case?

A. Yes, it is.

Q. Is there anything untoward or incorrect about that, in your opinion?

A. No, there's not.

Kilpatric doesn't challenge this testimony on appeal. Therefore, because any objectionable testimony on redirect was cumulative to properly admitted testimony, its admission was not plainly erroneous. *See People v. Bolton*, 859 P.2d 303, 310 (Colo. App. 1993) (determining there was no plain error where inadmissible evidence was cumulative to other properly admitted evidence).

Second, overwhelming evidence showed that Kilpatric committed the robberies. After all, Kilpatric confessed he did, providing unique details as to each. And he directed the detectives to items used in the robberies. Thus, any error in the admission of Detective Galbraith's brief redirect testimony doesn't cast serious doubt on the reliability of the conviction. *See People v. Munoz-Casteneda*, 2012 COA 109, ¶ 35 (deciding that admission of improper testimony about drug cartels did not constitute plain error where evidence of the defendant's guilt was overwhelming).

We therefore conclude that any error in admitting the redirect testimony was not plain.

(ECF No. 15-2 at 11-14).

### 3. AEDPA Analysis

Based on the Court's review of the entire record and the evidence presented at trial, this Court concludes that Detective Gailbraith's testimony was not so unduly prejudicial that it rendered the trial fundamentally unfair. As the Colorado Court of Appeals explained the testimony in question was cumulative of other properly admitted evidence. (T. 4/11/17 at 38-39, 80-81, 106, 110-112). And the state appellate court's finding that there was overwhelming evidence of Mr. Kilpatric's guilt is supported by the state court record as well. *See e.g., Wilson v. Sirmons*, 536 F.3d 1064, 1117-18 (10th Cir. 2008) (minor misstatement of fact does not render the trial fundamentally unfair when there was overwhelming evidence of guilt). As noted above, the overwhelming evidence of guilt included a confession that provided unique details of each robbery and the fact that Mr. Kilpatric directed the detectives to items used in the robberies. (T. 4/11/17 at 85-93, 98-105).

As such, Mr. Kilpatric fails to demonstrate that the decision of the Colorado Court of Appeals was based on an unreasonable determination of the facts in light of the evidence presented.

Mr. Kilpatric also fails to demonstrate that the decision is either contrary to or an unreasonable application of clearly established federal law. He does not cite any contradictory governing law set forth in Supreme Court cases or any materially indistinguishable Supreme Court decision that would compel a different result, *see House*, 527 F.3d at 1018, and he fails to demonstrate the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement," *Richter*, 562 U.S. at 103.

Based on the Court's review of the entire proceedings, this Court cannot conclude that admission of Detective Galbraith's brief testimony on re-direct rendered Mr. Kilpatric's trial fundamentally unfair. As a result, the Court finds that Mr. Kilpatric is not entitled to relief with respect to Claim Three.

### D. Juror's Question

Mr. Kilpatric finally asserts in Claim Four that the trial court violated his "constitutional right to due process affording the right and opportunity to present evidence in his defense." (ECF No. 10 at 6). He specifically challenges the trial court's decision to not ask a witness a question proposed by a jury member regarding how PTSD could affect judgment. (*Id.*).

### 1. *Applicable Supreme Court Law*

Because this claim also involves the admissibility of evidence, habeas relief may not be granted unless the evidentiary ruling "rendered the trial so fundamentally unfair that a denial of constitutional rights results." *Mayes,* 210 F.3d at 1293.

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment . . ., or in the Compulsory Process or Confrontation clauses of the Sixth Amendment . . ., the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (citations and internal quotation marks omitted). The right to present a defense, however, applies only to relevant evidence, and even that right is not absolute. *Montana v. Egelhoff,* 518 U.S. 37, 42 (1996). For example, "well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Holmes v. South Carolina*, 547 U.S. 319, 326 (2006) (citing Fed. R. Evid. 403); *see also Crane*, 476 U.S. at 689-90 (recognizing that "the constitution leaves the judges who must make these decisions 'wide latitude' to exclude evidence that is 'repetitive . . ., only marginally relevant' or poses an undue risk of 'harassment, prejudice, [or] confusion of the issues.'"). The United States Supreme Court, therefore, has recognized that the introduction of relevant evidence can be limited by the State for valid reasons under well-established rules of evidence, but "[i]n the absence of any valid state justification, exclusion of this kind of exculpatory evidence deprives a defendant of the basic right to have the prosecutor's case encounter and survive the crucible of meaningful adversarial testing." *Crane,* 476 U.S. at 689-91 (stating that "we

have never questioned the power of States to exclude evidence though the application of

evidentiary rules that themselves serve the interests of fairness and reliability—even if the

defendant would prefer to see that evidence admitted"); *see also Egelhoff,* 518 U.S. at 53

(recognizing that a constitutional right to present a complete defense does not provide "an

unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible

under standard rules of evidence"); *Holmes,* 547 U.S. at 326 (noting that "[w]hile the

Constitution thus prohibits the exclusion of defense evidence under rules that serve no

legitimate purpose or that are disproportionate to the ends that they are asserted to promote"

trial judges may rely on well-established rules of evidence, including Fed. R. Civ. 403 to

exclude relevant evidence); *Nevada v. Jackson,* 569 U.S. 505, 509 (2013) (observing that

"[o]nly rarely" has the Supreme Court "held that the right to present a complete defense

was violated by the exclusion of defense evidence under a state rule of evidence.").

### *2. State Court Proceedings*

On appeal, the Colorado Court of Appeals provided the following relevant background:

A. Additional Background

Kilpatric's personal therapist testified at trial that she had diagnosed
Kilpatric with post-traumatic stress disorder (PTSD). After this testimony, a juror
submitted a written question asking, "Is PTSD known to change judgment?"

At a bench conference, the prosecution acknowledged that PTSD does
affect judgment but objected to asking the question based on the concern that it
would "move into the issue of sanity," which wasn't at issue. Kilpatric's counsel
didn't object to the question being asked but said he understood the prosecution's
concern. The trial court didn't ask the question.

(ECF No. 15-2 at 14-15).

The Court of Appeals reviewed the claim for plain error and rejected the claim as follows:

22

While jurors are permitted to submit written questions for the court to ask a witness, a court has discretion to prohibit or limit questioning in accordance with the rules of evidence. *Medina*, 114 P.3d at 847; *see* Crim. P. 24(g). And the rules of evidence require evidence to be relevant to be admissible. *People v. Rath*, 44 P.3d 1033, 1038 (Colo. 2002); *see* CRE 401.

As framed, the juror's question was not tethered to any particular time. Thus, it could implicate Kilpatric's judgment at the time he committed the charged offenses. And Kilpatric's counsel seemingly acknowledged as much at trial. Because Kilpatric didn't plead an insanity defense and the parties agreed that mental condition evidence wouldn't be used to challenge his mental culpability for the charged offenses, the trial court properly exercised its discretion in declining to ask the question.

And to the extent the juror's question was relevant to Kilpatric's judgment at the time he made his inculpatory statements (an issue the parties agreed was relevant), the jury heard extensive evidence on that subject. Indeed, Kilpatric's therapist testified at length about the psychological effects of PTSD. And she even opined how Kilpatric's PTSD may have impacted his interactions with authority figures. Thus, any additional evidence on this point would have simply been cumulative.

Finally, without an offer of proof, no one knows what Kilpatric's therapist would have said in response to the juror's question. Because we don't, any claim that the response may have benefited Kilpatric or impacted the outcome is merely speculative.

Under the circumstances presented here, we conclude that the trial court didn't commit any error, let alone a plain one.

(ECF No. 15-2 at 16-17).

### 3. AEDPA Analysis

After reviewing the state court record, the Court finds that the trial court's decision to refrain from asking the juror's question did not render the trial fundamentally unfair. As the Colorado Court of Appeals explained, the question was not relevant as it went to the issue of mental culpability or insanity, which was not raised as a defense; any evidence that may have been

elicited would have been cumulative of testimony given concerning the psychological effects of PTSD; and any claim of prejudice was speculative.

Mr. Kilpatric fails to demonstrate that the decision of the Colorado Court of Appeals is based on an unreasonable determination of the facts in light of the evidence presented. The Court, therefore, finds that the state appellate court's assessment of the evidence was not irrational.

Mr. Kilpatric also fails to demonstrate the decision is either contrary to or an unreasonable application of clearly established federal law. He does not cite any contradictory governing law set forth in Supreme Court cases or any materially indistinguishable Supreme Court decision that would compel a different result, *see House*, 527 F.3d at 1018, and he fails to demonstrate the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement," *Richter*, 562 U.S. at 103.

Based on the Court's review of the entire proceedings, the Court cannot conclude that the state court's decision to not ask the juror's question rendered Mr. Kilpatric's trial fundamentally unfair. As a result, the Court finds that Mr. Kilpatric also is not entitled to relief with respect to Claim Four.

## IV. CONCLUSION

In summary, the Court finds that Mr. Kilpatric is not entitled to relief on his claims. Accordingly, it is

**ORDERED** that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 10) is **denied** and this case is **dismissed with prejudice**. It is further

**ORDERED** that no certificate of appealability shall issue because Applicant has not made

a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2254(c)(2); Fed. R. Governing Section 2254 Cases 11(a); *Slack v. McDaniel*, 529 U.S. 473, 483-85 (2000). It is further

**ORDERED** that leave to proceed *in forma pauperis* on appeal is denied. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order is not taken in good faith, and, therefore, *in forma pauperis* status is denied for the purpose of the appeal. *See Coppedge v. United States*, 369 U.S. 438 (1962). If Applicant files a notice of appeal, he must also pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

Dated October 27, 2022, at Denver, Colorado.

BY THE COURT:

Charlotte N. Sweeney
United States District Judge